**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH**

**NORTHER DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA *ex rel*. CHRISTOPHER A. WICKLIFFE and MARK J. HANSON,**<br><br>　　　　　　　**Plaintiffs,**<br><br>**vs.**<br><br>**EMC CORPORATION,**<br><br>　　　　　　　**Defendant.** | **MEMORANDUM DECISION AND ORDER**<br><br><br>**Case No.  1:06CV64 DAK** |

This *qui tam* action, brought pursuant to the False Claims Act, is before the court on the United States' "Statement of Interest in Favor of Dismissal for Lack of Subject Matter Jurisdiction."  A hearing on this issue was held on February 25, 2009.   At the hearing, the United States was represented by Arnold M. Auerhan and Eric A. Overby.  The *qui tam* Relators, Christopher A. Wickliffe and Mark J. Hanson, were represented by Karra J. Porter and Barton H. Kunz II.  Before the hearing, the court considered carefully the memoranda and other materials submitted by the parties.  Since taking this issue under advisement, the court has further considered the law and facts relating to the United States' request for dismissal.   The court has also considered the Supplemental Authority submitted by the Relators on February 20, 2009 and the Supplemental Authority submitted by the United States on March 20, 2009.  Now being fully advised, the court renders the following Memorandum Decision and Order.

# I.  BACKGROUND

The purpose of the False Claims Act ("FCA") "is to enhance the Government's ability to recover losses sustained as a result of fraud against the Government."  S.Rep. No. 99-345, at 1 (1986), *reprinted in* 1986 U.S.C.C.A.N. 5266, 5266.   The FCA empowers a private individual (a "relator") to bring a civil claim on his or her own behalf, and on behalf of the Government, against a person or company who knowingly presents a false claim to the Government for payment.  31 U.S.C. §§ 3729(a), 3730(a) and (b)(1).  *Ridenour v. Kaiser-Hill Co., L.L.C.*, 397 F.3d 925, 930 (10th Cir. 2005), *cert. denied*, 546 U.S. 816 (2005).   Section 3730(b)(2) gives the Government sixty days, plus any court-ordered extensions, "to elect to intervene and proceed with the action" after receiving the complaint and being informed of the material evidence.   At the end of the sixty-day period (unless extended), the government "shall proceed with the action ... or notify the court that it declines to take over the action."  31 U.S.C. § 3730(b)(4).    In this action, after receiving numerous extensions of time, the United States declined to intervene.[1]  But just prior to filing its Notice of non-intervention, the United States filed the instant request for dismissal of the action.[2]

In this FCA case, the Complaint generally alleges that defendant EMC Corporation ("EMC") knowingly sold defective computers to Government agencies.   Specifically, the Relators allege that certain EMC Symmetrix 5.0 and 5.5 computers contain defective

---

[1]  *See* Docket #36.  In its Notice of non-intervention, the United States requested that the case remain sealed until the court ruled on the instant request for dismissal, and the court granted the government's request.  *See* Docket #37.  Therefore, the case has remained under seal, but, as discussed below, the Complaint and several other documents will be unsealed upon entering the instant Order.

[2]  *See* Docket #31.

GTLP16612 universal bus transceivers manufactured by Fairchild Semiconductor Corporation (Fairchild) and that EMC concealed information regarding the defect from the Government and that some agencies had service interruptions caused by the defect.

The United States seeks dismissal of the Complaint, suggesting that the court lacks jurisdiction based on the FCA's first-to-file rule.  According to the United States, when the instant case was filed in May 2006, the same claims had already been alleged in another case, which was filed in another federal court and currently remains under seal.   This first-filed case will be referred to as the "First Action."   Specifically, the United States argues that the allegations raised by the Relators' Complaint in the instant action concern the same material elements, including the same defective parts and computers, that are the subject of the First Action, which was filed in 2004.   Because the instant Complaint does not provide the United States with a separate and distinct basis for recovery, it argues that the action is barred by the "first to file rule," 31 U.S.C. § 3730(b)(5), because the Relators' central allegations were already under investigation by the Government based on the First Action.

In the *qui tam* context, the first-to-file rule states:

> When a person brings an action under [the *qui tam* provision of the False Claims Act], no person other than the Government may intervene or bring a related action based on the facts underlying the pending action.

31 U.S.C. § 3730(b)(5).   This rule essentially prevents later-filing whistleblowers from bringing repetitive *qui tam* actions.  *United States ex rel. Grynberg v. Koch Gateway Pipeline Co.*, 390 F.3d 1276, 1279-80 (10th Cir. 2004).  This bar is a jurisdictional bar.   The United States contends that courts have routinely interpreted this provision to bar later-filed Complaints, even when the

3

details are somewhat different.   As "long as the same kind of conduct is at issue" or the "same material elements are at issue," the later-filed suit is barred.  Moreover, a court may make the determination based on the Complaints themselves; discovery or an evidentiary hearing is not necessary to make the determination.  *United States ex rel. LaCorte v. SmithKline Beecham*, 149 F.3d 227, 235 n.6 (3rd Cir. 1998).   Therefore, the United States contends, because the instant action contains the same material elements as the First Action, it must be dismissed.

Relators, however, do not agree.  While they do not dispute that the First Action was filed before the instant action, they contend that the first-to-file rule is inapplicable because the Complaint in the First Action does not satisfy the heightened pleading requirements applicable to a False Claims Act claim.   Relators contend that a deficient Complaint does not qualify as a "pending" action that bars subsequent action.  *See Campbell v. Redding Med. Ctr.,* 421 F.3d 817, 825 (9th Cir. 2005) (finding that a complaint that does not comply with Rule 9(b) does not trigger the first-to-file rule); *United States ex rel. Walburn v. Lockheed Martin Corp*., 431 F.3d 966, 972 (6th Cir. 2005) (same).

Relators also argue that the First Action is also jurisdictionally barred by the "public disclosure rule," and therefore does not qualify as an earlier filed action.   Specifically, they claim that the relator in the First Action disclosed the allegations to the media prior to filing the First Action.  Consequently, the only way to overcome this disclosure and maintain the lawsuit is for the relator to demonstrate that he or she was an "original source" of the information.   The Relators in this action claim that relator in the First Action cannot meet such a burden because the allegations are based on assumptions rather than independent knowledge of fraudulent

activity.   Therefore, they claim that the First Action cannot bar the instant action because the

First Action is jurisdictionally deficient in two different ways: it does not satisfy Rule 9(b) of the

Federal Rules of Civil Procedure ("FRCP"), and it is also barred by the public disclosure rule.

## II.  DISCUSSION

While the Government's request for dismissal of this action and the Relators' opposition

to this request have presented an interesting intellectual exercise regarding this court's authority

to make a determination as to the jurisdictional sufficiency of the First Action—an action filed in

another court and which has not yet faced any jurisdictional challenges itself—this analysis

proves to be irrelevant.

In this case, the United States appears to be unaware of its almost-unfettered authority to

dismiss a *qui tam* case when it has not yet been served on a defendant (and even, for that matter,

after it has been served).  This authority is not diminished even when the United States has

declined to intervene in the action.[3]  Specifically, the FCA expressly provides that "[t]he

Government may dismiss the action notwithstanding the objections of the person initiating the

action if the person has been notified by the Government of the filing of the motion and the court

has provided the person with an opportunity for a hearing on the motion."  31 U.S.C. §

3730(c)(2)(A); *see also Ridenour v. Kaiser-Hill Co., L.L.C.* 397 F.3d 925, 932 -933 (10th Cir.

2005), *cert. denied*, 546 U.S. 816 (2005); *Swift v. United States*, 318 F.3d 250, 251 (D.C. Cir.

_____

[3]  The Tenth Circuit has specifically ruled that the FCA does not require the government
to intervene before it seeks dismissal.  Indeed, the Tenth Circuit has concluded that "a plain
reading of the statute does not require it, canons of statutory construction do not support such a
result, and in our view, such a reading would render the FCA constitutionally infirm."  *Ridenour
v. Kaiser-Hill Co., L.L.C.* 397 F.3d 925, 932 (10th Cir.), *cert. denied*, 546 U.S. 816 (2005); *see
also Swift v. United States*, 318 F.3d 250, 251 (D.C. Cir.), *cert. denied*, 539 U.S. 944 (2003).

2003), *cert. denied*, 539 U.S. 944 (2003).

In *Ridenour*, the Tenth Circuit determined the appropriate standard of review of a government motion to dismiss a *qui tam* action under 31 U.S.C. § 3730(c)(2)(A).   The court found relevant a Senate Report pertaining to the passage of this section:

> [W]hen the Government takes over a privately initiated action, the individual who brought the suit will be served, upon request, with copies of all pleadings filed as well as deposition transcripts. Additionally, the person who brought the action may formally object to any motions to dismiss or proposed settlements between the Government and the defendant.
>
> Any objections filed by the *qui tam* plaintiff may be accompanied by a petition for an evidentiary hearing on those objections. The Committee does not intend, however, that evidentiary hearings be granted as a matter of right.  We recognize that an automatic right could provoke unnecessary litigation delays.  Rather, evidentiary hearings should be granted when the *qui tam* relator shows a 'substantial and particularized need' for a hearing. Such a showing could be made if the relator presents a colorable claim that the settlement or dismissal is unreasonable in light of existing evidence, that the Government has not fully investigated the allegations, or that the Government's decision was based on arbitrary and improper considerations.

*Ridenour*, 397 F.3d at 935 (quoting S. Rep. 99-345, at 26 (1986), *reprinted in* 1986 U.S.C.C.A.N. 5266, 5291).

In considering the appropriate standard of review to apply in this situation, the Tenth Circuit also examined a decision from the District of Columbia Circuit Court of Appeals, *Swift v. United States*, 318 F.3d 250, 251 (D.C. Cir. 2003).  In *Swift*, the D.C. Circuit had considered the standard to apply to a government motion to dismiss a *qui tam* action when the Government had not intervened and the defendant had not yet been served–the same circumstances present in the case at bar.   According to the *Swift* court, the Government's decision to dismiss is nearly unreviewable, except, for example, where fraud on the court is alleged.  *Ridenour,* 397 F.3d at

935 (referring to *Swift*, 318 F.3d at 253).  According to the D.C. Circuit, "'Section

3730(c)(2)(A)'s 'opportunity for a hearing' language is simply intended to provide a forum for

the relator to try to convince the Government not to dismiss the case.'"  *Ridnenour*, 397 F.3d at

935 (quoting *Swift*, 318 F.3d at 253).  The Tenth Circuit noted that the *Swift* court had reserved

deciding the correct standard to apply in instances where the defendant had already been

served–the circumstances present in *Ridenour*.  *Id.* (referring to *Swift*, 318 F.3d at 252-53).

Thus, in *Ridenour*, the Tenth Circuit was faced with the question that the *Swift* court had

declined to address:  the appropriate standard to apply to a government motion to dismiss a *qui

tam* action when the defendant had been served.   The Ninth Circuit, however, had previously

analyzed that very question in *United States ex rel. Sequoia Orange Co. v. Baird-Neece Packing

Corp.*, 151 F.3d 1139, 1145 (9th Cir. 1998), and thus the Tenth Circuit looked to *Sequoia* for

guidance.

In *Sequoia*, the Ninth Circuit established the following standard for determining whether

dismissal by the Government is appropriate: "(1) identification of a valid government purpose;

and (2) a rational relation between dismissal and accomplishment of the purpose."  *Id.* at 1145

(internal quotation marks omitted).   The *Sequoia* court determined that if the Government

satisfies this two-step test, "the burden switches to the relator to demonstrate that dismissal is

fraudulent, arbitrary and capricious, or illegal."  *Id.*

After considering the Ninth Circuit's analysis in *Sequoia*, the Tenth Circuit in *Ridenour*

then adopted the *Sequoia* standard, finding that this test "recognizes the constitutional

prerogative of the Government under the Take Care Clause, comports with legislative history,

and protects the rights of relators to judicial review of a government motion to dismiss."

*Ridenour*, 397 F.3d at 936.   The Tenth Circuit, though, specifically clarified that it would not decide at that time "whether § 3730(c)(2)(A) gives the judiciary the right to pass judgment on the Government's decision to dismiss an action where the defendant has not been served and where the Government did not intervene in the action, facts of the sort presented in *Swift."   Id*. n.17.

Thus, the Tenth Circuit has specifically set forth the standard of review to apply when the Government moves for dismissal in a *qui tam* action when the defendant has already been served. As stated above, however, the instant action presents circumstances that are virtually identical to the scenario presented in *Swift—a qui tam* action that has not yet been served on the defendant and in which the Government did not intervene.

Given the circumstances present in the case at bar, the court finds it probable that the Tenth Circuit would follow *Swift*.  Therefore, barring allegations of fraud on the court, the court finds that the United States' authority to dismiss a *qui tam* case is virtually unfettered when, pursuant to Section 3730(c)(2)(A), the court provides the relator an 'opportunity for a hearing,' which, according to the *Swift* court*,* is language that is simply intended to provide a forum for the relator to try to convince the Government not to dismiss the case.   *Ridenour*, 397 F.3d at 935 (quoting *Swift*, 318 F.3d  at 253).

Indeed, to impose more onerous requirements on the United States in this situation might render the FCA constitutionally infirm.[4]   Because courts are to interpret statutes in a manner that

_____

[4]  The constitutionality of the FCA has been challenged several times under the claim that it violates the separation of powers doctrine inherent in the Take Care Clause.  *See Ridenour v. Kaiser-Hill Co., L.L.C.* 397 F.3d 925, 934 (10th Cir. 2005).  The Executive Branch is entrusted with the duty to "take Care that the Laws be faithfully executed. . . ."   U.S. Const., art. II, § 3. The *Ridenour* court noted that in *United States ex. rel Stone v. Rockwell International Corp.*, 282 F.3d 787 (10th Cir. 2002), the Tenth Circuit "had previously cited favorably to decisions of other

renders them constitutionally valid, the court should avoid an interpretation that unnecessarily binds the United States. *Ridenour,* 397 F.3d at 934 (quoting *Zadvydas v. Davis,* 533 U.S. 687, 689 (2001)).

In this action, the Relators were given notice and an opportunity to be heard. Although the parties were focused on an issue that this court has discovered to be irrelevant (*i.e.*, whether the First Action precluded the instant action due to the First Action's alleged insufficiencies under FRCP 9(b)), the parties nevertheless presented their arguments as to why they believed this action should or should not be dismissed.[5]   The crux of the Government's argument in this case is that the First Action alerted the United States as to the alleged fraud and provided sufficient information for the Government to launch an investigation, which has been ongoing for the last several years. Thus, the United States claims that the instant case does nothing to further the purposes of the FCA because the United States had already been investigating the same

---

circuits that have uniformly held the FCA is constitutionally sound as long as it is interpreted as vesting in the Executive Branch sufficient control over *qui tam* actions so there is no violation of its duty to enforce the laws of the land." *Id.* at 934.   For example, the Fifth Circuit has stated that the Government retains sufficient control of a *qui tam* action to save the FCA from being unconstitutional because the Government can veto settlements without intervening, and it "retains the unilateral power to dismiss an action notwithstanding the objections of the person." *Riley v. St. Luke's Episcopal Hosp.,* 252 F.3d 749, 753 (5th Cir. 2001) (en banc) (quotation marks omitted). The Ninth Circuit has concluded that the FCA does not violate the doctrine of separation of powers because the Government retains sufficient control over *qui tam* actions, including the power "albeit somewhat qualified, to end *qui tam* litigation." *United States ex rel. Kelly v. Boeing Co.,* 9 F.3d 743, 754 (9th Cir. 1993). These limitations to which the *Kelly* court refers are the FCA requirements to give the relator notice and a hearing. *Id.* at 753.

[5]  If Relators believe that they have evidence as to any alleged fraud on the court or if they believe that they were otherwise deprived of an opportunity to be heard in light of this court's ruling, they may request another hearing, setting forth the reasons they believe they are entitled to another hearing.

allegations of fraud against this Defendant.   The Relators argued that the First Action would not survive a challenge under FRCP 9(b) and that the information had been publicly disclosed by the relator in the First Action–and he was not an original source who could overcome this public disclosure bar.

Even if the Tenth Circuit were to impose the slightly more restrictive *Ridenour* standard to a Government motion to dismiss a *qui tam* action when the defendant has not yet been served, the instant action would still be dismissed.   Under the *Ridenour* test, the Government would be required to demonstrate a rational relation to a valid government purpose.   In *Ridenour*, the court looked to the *Sequoia* court's instruction that "to establish a rational relation to a valid governmental purpose, '[t]here need not be a tight fitting relationship between the two; it is enough that there are plausible, or arguable, reasons supporting the agency decision.'" *Ridenour*, 397 F.3d at 397 (quoting *United States ex. rel. Sequoia Orange Co. v. Sunland Packing House Co.,* 912 F. Supp. 1325, 1341 (E.D. Ca. 1995) (quotation marks omitted)).

Here, the United States seeks dismissal of this action because the Government is already aware of these allegations against EMC, that the allegations in the instant case do not provide any additional information needed by the Government, and that the Government has been conducting an investigation into the claimed fraud since it became aware of the allegations in 2004. Therefore, the court finds that the Government has identified a valid government purpose for dismissing the instant action and that there is a rational relation between dismissal and accomplishment of the purpose.   There is simply no logic in requiring the United States to litigate a duplicative action against a defendant.   Thus, there are "plausible reasons" supporting the Government's decision to end the instant litigation.

Accordingly, under the *Ridenour/Sequoia* test, the burden then switches to the Relators to demonstrate that dismissal would be fraudulent, arbitrary and capricious, or illegal.  Relators, however, have made no such arguments and there is nothing in the record to suggest that there would be anything fraudulent, arbitrary and capricious, or illegal about dismissing this action. Their claim is essentially that they have better, more detailed information than the Relator in the First Action because their information comes from first-hand knowledge–not from mere assumptions, as they allege forms the basis of the relators allegations in the First Action.   This argument, however, is not sufficient to satisfy their burden under *Ridenour*.

Therefore, the court finds that under either the *Swift* test or the slightly more restrictive *Sequoia* test, the United States is authorized to dismiss the instant action.

### III.  ISSUES PERTAINING TO SEALED DOCUMENTS

Pursuant to the court's Order dated June 13, 2008, the Clerk of the Court is now directed to unseal this case, although certain documents within the docket will remain under seal at this time.  Specifically, the court directs that the Complaint [docket #1] and docket entries 36-41 be unsealed.

As to the Government's Statement of Interest in Favor of Dismissal (Docket #31) and the Relator's Opposition Memorandum (Docket #35), the parties are instructed to file redacted copies of their respective briefs.   In other words, the parties should refile their briefs after redacting any confidential information pertaining to the sealed First Action, and the United States obviously need not attach the sealed Complaint as an exhibit to the redacted version of its request for dismissal.

Also, the court is inclined to unseal all other documents in this case, but it will permit

11

either party to show cause why a particular document should remain under seal.  If the court has

not received an objection to unsealing the remaining documents by April 17, 2009, the court will

enter an Order lifting the seal on all other documents (except for Docket #31 and #35, which will

remain under seal).  The party objecting should bear in mind that the court will maintain the seal

on a document only if unsealing the document would disclose confidential investigative

techniques, reveal information that would jeopardize on ongoing investigation, or injure non-

parties.  *Jessop v. Luther*, 277 F.3d 926, 928 (7th Cir. 2002); *United States ex rel. Yannacopolous*

*v. General Dynamics*, 457 F. Supp. 2d 854, 858-59 (N.D. Ill. 2006).

## IV.  CONCLUSION

For the foregoing reasons and good cause appearing, IT IS HEREBY ORDERED that the

United States' request for dismissal [docket #31] is GRANTED, and this case is DISMISSED

with prejudice.   The Clerk of the Court is directed to unseal this case, but certain documents

within the docket will remain under seal at this time.  Specifically, the court directs that the

Complaint [Docket #1] and Docket entries ##36-41 be unsealed at this time.   This Memorandum

Decision and Order shall not be filed under seal.  The parties are referred to the discussion above

regarding the sealed status of the remaining documents.

DATED this 30th day of March, 2009.

BY THE COURT:

DALE A. KIMBALL
United States District Judge